UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Rae Anne McKenzie,

    Plaintiff,

v.                                                          Civil No. 05-1265 (JNE/SRN)
                                                          ORDER

Rider Bennett, LLP, and Gregory Erickson,

    Defendants.

    Rae Anne McKenzie claims that her former employer, Rider Bennett, LLP, discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964. She also asserts claims of negligent supervision, negligent retention, negligent infliction of emotional distress, assault, and battery against Rider Bennett, and assault and battery against Gregory Erickson, an attorney for whom she worked at Rider Bennett. McKenzie now appears pro se. After the parties moved for summary judgment, Rider Bennett filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code. The Court stayed the action as to Rider Bennett and dismissed McKenzie's claims against Erickson. Later, the United States Bankruptcy Court for the District of Minnesota granted McKenzie relief from the automatic stay. For the reasons set forth below, the Court dismisses McKenzie's claims against Rider Bennett.

## I.    BACKGROUND

    From April 2003 to June 2004, McKenzie worked at Rider Bennett as a legal secretary. Initially, she worked for several attorneys. In September 2003, McKenzie was assigned to work for Erickson. In late April 2004, McKenzie wrote a letter to Erickson. He disclosed the letter to Rider Bennett, and the firm investigated whether Erickson had sexually harassed McKenzie. McKenzie was placed on paid leave during the investigation. McKenzie returned to Rider

1

Bennett after the investigation, but she was no longer assigned to Erickson. After her return, McKenzie sent e-mails to Erickson, and Rider Bennett terminated her employment.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.**     **Rider Bennett's motion**

*1.     Title VII*

McKenzie claims that Rider Bennett violated Title VII by discriminating against her on the basis of her gender and retaliating against her. With regard to McKenzie's Title VII claim based on a hostile work environment, Rider Bennett argues there is no evidence that McKenzie experienced unwelcome harassment or that the alleged harassment affected a term, condition, or privilege of her employment. *See Cottrill v. MFA, Inc.*, 443 F.3d 629, 636 (8th Cir.), *cert. denied*, 127 S. Ct. 394 (2006). In support, Rider Bennett cites several statements made by

McKenzie. For example, in her letter to Erickson, McKenzie stated that she loved the attention Erickson allegedly gave her and felt flattered by it:

> I say things are so different because it seems that ever since I brought up the other "we never had this talk" subject, you also quit teasing, talking, with me, and seem at times to be ill at ease with me. I feel bad about that because I was really liking it, and I felt a lot of affection for you because of it, but I seemed to have cut off my nose to spite my face by saying anything. I know I get touchy feely when I feel affection for someone, and I hope it isn't that what makes you ill at ease if indeed you have been. . . .
>
> . . . [S]o despite the fact that I love the attention, I have never thought of it as anything more than what it was at the moment. I'd be a big fat liar to say I wasn't flattered you would pay that kind of attention to me.

In a letter to Grace Hall, Rider Bennett's director of human resources, McKenzie stated that she had not felt sexually harassed while working for Erickson:

> My working relationship with [Erickson] was very good. I do have access to the Offensive Behavior Policy. . . . I have never made a complaint about [Erickson] because I had no complaint. When [Erickson] and I worked together, we were professional but we also did joke, were silly, and teased, bantered and bickered too, so we had fun while we worked really hard. If I had thought of [Erickson's] behavior then as offensive, I would have reported it as such. It was only some recent behavior by [Erickson] that made me uncomfortable. . . .
>
> When I wrote the letter to [Erickson], I did not feel sexually harassed. What I was feeling was uncomfortable with some of [his] recent behavior. . . .
>
> . . . .
>
> . . . It was not my intention to accuse [Erickson] of sexual harassment, and I did not. On Friday after I gave him the letter, [Erickson] asked me, via email, to come to his office because we needed to talk. I told you and Pam [Harris, a partner at Rider Bennett,] that [his] first words to me were, "I don't know what I said or did to make you think I was sexually harassing you." I told him I did not call it sexual harassment. That I had never thought of myself as being sexually harassed. That if I had felt sexually harassed, I would have immediately gone to see [Hall] or someone else in a position of authority without even talking with him . . . .
>
> Instead of feeling sexually harassed, it was quite the opposite. I told you and Pam Harris frequently in our interview that I was not offended but, rather, I was flattered by the attention, and that I had responded to it. Again, it was only recently that I had become uncomfortable with some of [Erickson's] behavior.

3

McKenzie responds by directing the Court to allegations in her Amended Complaint and an unidentified page of a deposition transcript that does not appear in the record. She does not direct the Court to any evidence that raises a genuine issue of material fact as to whether she experienced unwelcome harassment that affected a term, condition, or privilege of her employment. *See Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1039 (8th Cir. 2007) ("The party opposing summary judgment cannot rest solely on the pleadings, but instead must set forth specific facts showing there is a genuine issue of material fact for trial."). The Court therefore dismisses McKenzie's Title VII claim based on a hostile work environment.

As to McKenzie's Title VII claim based on disparate treatment, Rider Bennett contends that McKenzie has not identified any similarly-situated male employee who received different treatment. *See Shaffer v. Potter*, 499 F.3d 900, 905-06 (8th Cir. 2007); *Thomas v. Corwin*, 483 F.3d 516, 529-30 (8th Cir. 2007); *Wells v. SCI Mgmt., L.P.*, 469 F.3d 697, 701 (8th Cir. 2006). McKenzie compares herself to Erickson, but Erickson was the alleged harasser and McKenzie was the alleged victim. The day prior to her termination, McKenzie agreed to cease all contact with Erickson. McKenzie has not identified any similarly-situated male employee who received different treatment. Viewing the record in the light most favorable to McKenzie, the Court concludes that she has not raised a genuine issue of material fact on her Title VII claim based on disparate treatment. The Court therefore dismisses the claim.

The Court turns to McKenzie's retaliation claim. McKenzie must first make a prima facie case by showing: (1) she engaged in protected conduct; (2) a reasonable employee would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct. *Carrington v. City of Des Moines*, 481 F.3d 1046, 1050 (8th Cir. 2007). The second prong is objective, requiring consideration of whether a

4

reasonable employee in the plaintiff's position might have been dissuaded from making a discrimination claim because of the employer's retaliatory action. *Burlington N. & Sante Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2414-15 (2006); *Higgins v. Gonzales*, 481 F.3d 578, 589 (8th Cir. 2007). If the plaintiff makes a prima facie case, the defendant must proffer a legitimate, non-discriminatory reason for the materially adverse action. *Carrington*, 481 F.3d at 1050. The plaintiff then must show that the proffered reason was a pretext for retaliation. *Id.* Rider Bennett contends that McKenzie has no evidence to support her retaliation claim.

McKenzie first claims that Rider Bennett retaliated against her by removing her from her assignment. According to Hall, McKenzie's "assignment was changed so that she would not be forced to work with the person against whom she had lodged the complaint." McKenzie does not direct the Court to evidence that raises a genuine issue of material fact about her reassignment. A reasonable employee would not find Rider Bennett's reassignment of McKenzie to separate her from her alleged harasser to be materially adverse. In addition, McKenzie has not demonstrated that Rider Bennett's reason for reassigning her was a pretext for retaliation.

McKenzie next asserts that Rider Bennett retaliated against her by placing her on paid leave. Erickson disclosed McKenzie's letter to Rider Bennett on a Friday in late April 2004. Two days later, Hall called McKenzie and asked to meet the next day. McKenzie responded that she did not plan to go to work that Monday, but she ultimately agreed to meet with Hall. At the end of their meeting, Hall advised McKenzie that Rider Bennett was investigating her complaints and that McKenzie could go on paid leave during it. In a letter to Hall dated May 17, 2004, McKenzie wrote that she was "grateful" for the paid leave because she was "not ready to return to work." McKenzie does not direct the Court to evidence that raises a genuine issue of material

fact about her placement on paid leave. A reasonable employee would not find Rider Bennett's placement of McKenzie on paid leave to be materially adverse.

McKenzie also argues that Rider Bennett retaliated against her by demoting her to a floater position upon her return from leave. Rider Bennett contends that her assignment to a floater position was not a demotion. According to Hall, secretaries at Rider Bennett were assigned to particular attorneys or as floaters. Floaters assisted attorneys whose secretaries were out of the office or needed additional assistance. There was no hierarchy with regard to the secretarial positions and no difference with respect to salary or benefits. In response, McKenzie does not direct the Court to evidence that raises a genuine issue of material fact as to whether her assignment was a demotion. A reasonable employee would not find Rider Bennett's assignment of McKenzie to a floater position to be materially adverse.

McKenzie also contends that Rider Bennett retaliated against her by assigning her to a different floor. According to Hall, McKenzie asked to be moved from the floor where Erickson worked. Although McKenzie later sought to remain on the floor where Erickson worked, Rider Bennett moved her to a different floor upon her return from leave. A reasonable employee would not find Rider Bennett's move of McKenzie to a different floor to be materially adverse. *See Turner v. Gonzales*, 421 F.3d 688, 697 (8th Cir. 2005). In addition, McKenzie has not demonstrated that Rider Bennett's reason for moving her was a pretext for retaliation.

McKenzie maintains that Rider Bennett retaliated against her by denying her annual review. McKenzie's annual review was scheduled in early May 2004, but it did not take place because McKenzie was on leave. After McKenzie's return, Hall stated that McKenzie's annual review would take place in early June 2004. A reasonable employee would have not found the delayed review to be materially adverse.

Finally, McKenzie claims that Rider Bennett retaliated against her by terminating her employment. Rider Bennett contends that it terminated her employment because she continued to contact Erickson after Rider Bennett had ordered her to cease contact with him and that McKenzie cannot show this reason is a pretext for retaliation. According to Hall, she and Harris met with McKenzie in early June 2004 and instructed McKenzie to cease all contact with Erickson. Nevertheless, after the meeting, McKenzie sent several e-mails to Erickson. Rider Bennett terminated McKenzie's employment the following day. In her affidavit, McKenzie states that there was no mention of a no-contact order at the meeting. Instead, according to McKenzie, Harris told McKenzie of Erickson's discomfort with McKenzie's continued contact. McKenzie responded by agreeing to cease contact with him. Based on the temporal proximity of her complaint and termination, McKenzie concludes that Rider Bennett retaliated against her. Viewing the record in the light most favorable to McKenzie, the Court concludes that she has not raised a genuine issue of material fact as to whether Rider Bennett's legitimate, non-discriminatory reason for her termination was a pretext for retaliation. *See Carrington*, 481 F.3d at 1053; *Arraleh v. County of Ramsey*, 461 F.3d 967, 978 (8th Cir. 2006) ("[T]emporal proximity alone is generally insufficient to prove pretext."), *cert. denied*, 127 S. Ct. 2100 (2007).

In short, McKenzie has not directed the Court to evidence that raises a genuine issue of material fact on her retaliation claim against Rider Bennett. The Court therefore dismisses the claim.

2.   *State-law claims*

Rider Bennett asserts that McKenzie's claims of negligent supervision and negligent retention should be dismissed because she did not experience a physical injury or a threat of physical injury. To prevail on claims of negligent supervision or negligent retention, a plaintiff

must have experienced a physical injury or a threat of physical injury. *Johnson v. Peterson*, 734 N.W.2d 275, 277 (Minn. Ct. App. 2007) (negligent supervision); *Bruchas v. Preventive Care, Inc.*, 553 N.W.2d 440, 443 (Minn. Ct. App. 1996) (negligent supervision and negligent retention). In an e-mail to Hall dated May 28, 2004, McKenzie wrote, "I have never felt my physical safety threatened." McKenzie does not direct the Court to evidence that raises a genuine issue of material fact as to whether she was ever threatened with or experienced a physical injury. The Court therefore dismisses her claims of negligent supervision and negligent retention.

Rider Bennett argues that McKenzie's claim of negligent infliction of emotional distress should be dismissed because she cannot establish that she was in a zone of danger of physical impact or that she reasonably feared for her safety. *See Engler v. Ill. Farmers Ins. Co.*, 706 N.W.2d 764, 767 (Minn. 2005); *Wall v. Fairview Hosp. & Healthcare Servs.*, 584 N.W.2d 395, 408 (Minn. 1998). McKenzie does not direct the Court to any evidence that raises a genuine issue of material fact as to whether she was in a zone of danger of physical impact or reasonably feared for her safety. The Court therefore dismisses her claim of negligent infliction of emotional distress.

Finally, McKenzie alleges that Rider Bennett is liable for Erickson's assault and battery of her. On August 9, 2007, the Court dismissed McKenzie's assault and battery claims against Erickson because McKenzie had not supported the claims with any evidence. Accordingly, the Court dismisses the assault and battery claims against Rider Bennett.

**B.    McKenzie's motion**

In addition to the claims addressed above, McKenzie asserts that Rider Bennett violated Minn. Stat. § 481.071 (2006) and that Rider Bennett intentionally inflicted emotional distress on

8

her.  The Amended Complaint asserts neither a violation of section 481.071 nor a claim of intentional infliction of emotional distress.  The Court therefore declines to consider McKenzie's arguments about section 481.071 and intentional infliction of emotional distress.

### III.   CONCLUSION

Having dismissed all claims against Rider Bennett and Erickson in this Order and the Order dated August 9, 2007, the Court directs the Clerk of Court to close this case and enter judgment.  Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The Amended Complaint is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  January 8, 2008

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge